UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                            CASE NO. 6:22-cr-123-GAP-DCI

MICHAEL COURTNEY SHIRLEY,

     Defendant.

_____/

**MOTION TO DISMISS INDICTMENT BASED UPON
UNCONSTITUTIONALITY OF 18 U.S.C. § 1346 ON ITS
FACE AND AS APPLIED IN THIS CASE  AS  VAGUE AND,
THEREFORE, VIOLATIVE OF THE DUE PROCESS
<u>CLAUSE OF THE FIFTH AMENDMENT</u>**

The Defendant, MICHAEL COURTNEY SHIRLEY, by and through his

undersigned attorney, hereby respectfully requests this Honorable Court to enter an

order dismissing the Indictment in the above-referenced case because the Indictment

is predicated upon violations of the 18 U.S.C. §§ 1343 and 1346.  It is Defendant's

position that the specification in 18 U.S.C. § 1346 that "scheme or artifice to defraud"

in the mail fraud and wire fraud statutes, §§ 1341 and 1343, includes "a scheme or

artifice to deprive another of the intangible right of honest services," is vague and

therefore violates the Due Process Clause of the Fifth Amendment.  The Defendant

files this motion candidly recognizing that this argument was previously rejected by the United States Supreme Court[1].

## THE INDICTMENT

The Defendant, (hereinafter sometimes referred to as "Mr. Shirley"), is charged in Count 1 with Conspiracy to Commit Honest Services Fraud in violation of 18 U.S.C. §§ 1343 and 1346.  It is alleged that Mr. Shirley through a company called Praetorian entered into a contract to provide goods and services to the Seminole County Tax Collector's Office.  The contract was signed by Mr. Shirley on behalf of the company Praetorian.  Joel Greenberg, the elected tax collector for Seminole County, signed the contract on behalf of the Seminole County Tax Collector's Office.

Count 1 of the Indictment alleges that as part of the conspiracy, Mr. Shirley and Praetorian would and did submit invoices to the governmental agency that included prices for goods and services that were "inflated" to enrich Mr. Shirley and Praetorian and to thereby defraud the governmental agency.  Count 1 charges that as part of the conspiracy, Mr. Shirley would and did agreed to pay bribes and kickbacks to Mr. Greenberg in exchange for receiving favorable official action by Mr. Greenberg.

---

[1]This motion is being filed to preserve the issue for appellate review.  The United States Supreme Court has shown a willingness to reconsider prior federal precedents construing the application of the honest services-fraud statute.  See, Joseph Percoco v. United States, No. 21-1158 (May 11, 2023), and Ciminelli v. United States et al., No. 21-1170 (May 11, 2023).

Count 1 further alleges that as part of the alleged conspiracy, Mr. Greenberg would and did provide favorable official action as requested and as opportunities arose, including by employing Mr. Shirley and Praetorian and by causing Mr. Shirley and Praetorian to be paid, including the "inflated" invoices that Mr. Shirley and Praetorian allegedly submitted. It was further alleged that Mr. Shirley withdrew cash from a bank in the Middle District of Florida and that the cash was eventually deposited by Mr. Greenberg into another bank in the Middle District of Florida.

Counts 2 through 5 of the Indictment allege violations of Honest Services Fraud regarding four separate wire transfers into banks as specifically described in the Indictment.

At all times material in the case, Mr. Shirley was not a "public official" nor did he have an employment relationship with the Seminole County Tax Collector's Office. It is alleged that Mr. Shirley was an independent contractor and that a company that he controlled, Praetorian, had a written independent contractor agreement with the Seminole County Tax Collector's Office that was entered into by Joel Greenberg, the then-elected Seminole County Tax Collector.

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS

The defense initially concedes that the United States Supreme Court has previously found 18 U.S.C. § 1346 as applied to the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, constitutional in certain situations generally involving bribery or kickback cases to be discussed below.  However, the Honest Services theory of fraud as reposed in those statutes has been repeatedly examined by the federal courts, including the United States Supreme Court, in the past.

### The Honest-Services Fraud Theory

The honest-services theory of fraud apparently originated in Shushan v. United States, which held that bribery is a "scheme to defraud the public" and thus falls within the mail fraud statute's prohibition of any "scheme to defraud."  117 F.2d 110, 115 (5th Cir. 1941).  The court reasoned that public officials owe "sacred duties," and that bribes induce "betrayal" of those duties and deprive the public of the official's "fair judgment."  Id.

The theory took off in the 1970s, with the Courts of Appeals agreeing that depriving the "citizens" of their officials' "honest and faithful services" by a "breach of fiduciary duty" can be mail or wire fraud, even absent "property loss."  United States v. Isaacs, 493 F.2d 1124, 1149-50 (7th Cir. 1974); see, e.g., United States v.

4

Mandel, 591 F.2d 1347, 1362 (4th Cir. 1979) ("A fraud is perpetrated upon the public to whom the official owes fiduciary duties"); see also, Skilling, 561 U.S. at 400-01 (recounting this history).

The Supreme Court rejected the honest-services theory--overturning this lower-court consensus--in McNally v. United States, 483 U.S. 350 (1987).  The Court held that "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government."  Id. at 356.  McNally invoked the rule of lenity, explaining "that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language."  Id. at 359-60.  Declining to "construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials," this Court read it "as limited in scope to the protection of property rights."  Id. at 360.  "If Congress desires to go further, it must speak more clearly than it has."  Id.

In Skilling v. United States, the Court held that the honest-services statute, 18 U.S.C. § 1346, must be limited to bribery and kickback cases; otherwise, the statute would be unconstitutionally vague.  561 U.S. 358, 412-13 (2010).  The Court rejected the government's entreaty to "locat[e] within [the mail and wire fraud statutes]" a

5

prohibition on not just bribery and kickbacks, but also "undisclosed self-dealing by a public official or private employee--i.e., the taking of official action by the employee that furthers his own undisclosed financial interest while purporting to act in the interests of those whom he owes a fiduciary duty." Id. at 409.  The Court explained that "a reasonable limiting construction of § 1346 must exclude this amorphous category of cases" because, otherwise, the statute would fail to provide fair notice and would invite arbitrary and inconsistent prosecutions. Id. at 408, 410, 412.

While the majority opinion in Skilling upheld the "honest services fraud" statute as limited to alleged kickback and bribery cases as discussed in the opinion, Justice Scalia, joined by Justice Thomas and Justice Kennedy, would have invalidated Mr. Skilling's conviction based on the unconstitutionality of the statutory scheme as violative of the Due Process Clause of the Fifth Amendment to the United States Constitution.

**Joseph Percoco v. United States**

Recently, the United States Supreme Court took another look at the Honest Services Fraud statute in Joseph Percoco v. United States, No. 21-1158. On May 11, 2023, the United States Supreme Court held that instructing the jury based on the Second Circuit's 1982 decision in Margiotta on the legal standard for finding that a

6

private citizen owes the government a duty of honest services was error. For appellate preservation purposes,   Mr. Shirley asserts that the statutes are unconstitutional on their face for the reasons stated by Justice Gorsuch and Justice Thomas in their concurring opinion in Percoco and Justice Scalia, Justice Thomas and Justice Kennedy concurring opinion in Skilling.

In Percoco, Justice Gorsuch stated:

> The Court holds that the jury instructions in this case were "too vague." *Ante*, at 10. I agree. But to my mind, the problem runs deeper than that because no set of instructions could have made things any better. To this day, no one knows what "honest-services fraud" encompasses. And the Constitution's promise of due process does not tolerate that kind of uncertainty in our laws–especially when criminal sanctions loom. "Vague laws" impermissibly "hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct." *United States v Davis*, 588 U.S.___, ___ (2019) (slip op., at 1).

Honest-services fraud and this Court's vagueness juris-
prudence are old friends. The story traces back to the early 1940s
when a string of lower courts began stretching the federal mail-
fraud statute's phrase "scheme or artifice to defraud." 18 U.S.C.
§1341. Everyone understood that the phrase covers efforts to
swindle money or property. But some lower courts began
suggesting that the phrase also sweeps in schemes to deprive
others of "intangible rights," including the right to "honest
services." *Skilling v. United States*, 561 U.S. 358, 400 (2010)
(citing cases). What did this new "honest-services fraud" concept
encompass? Even the lower courts that devised the theory could
not agree. They clashed over everything from who owes a duty
of honest-services to what sources of law may give rise to that
duty to what sort of actions constitute a breach of it. See *id.,* at
416-420 (Scalia, J., concurring in part and concurring in
judgment).

Eventually, that uncertainty demanded this Court's
attention. In *McNally v. United States*, 483 U.S. 350 (1987), the
Court held that, while §1341 "clearly protects property rights," it

does not protect more abstract interests like a right to "honest...government." *Id.,* at 360.  If Congress wanted to extend the law to protect more than property rights, the Court added, "it must speak more clearly than it has." *Ibid.*

Soon Congress did speak.  It enacted § 1346, which now defines the phrase "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services."  In one sense, the new law did offer clarity.  It dispelled any doubt about whether Congress intended the mail-fraud statute (and later the wire-fraud statute, §1343) to protect a right to "honest services."  But in another sense, the law clarified nothing.  Congress did not address *McNally's* concern that the phrase "honest-services fraud" is unworkably vague.  Nothing in the new law attempted to resolve when the duty of honest services arises, what sources of law create that duty, or what amounts to a breach of it.  Nor did the new law cross-reference any portion of the federal criminal code that might have lent clarity to the concept.

These problems resurfaced in *Skilling*. There, a majority of the Court acknowledged that a "vagueness challenge [to §1346] ha[d] force." 561 U.S., at 405. But instead of "throw[ing] out the statute as irremediably vague," the majority elected to fill in some of the blanks. *Id.*, at 404. Recognizing the many internal tensions in that line of cases, the majority attempted to "pare that body of precedent down to its core." *Ibid.* What exactly falls within that "core"? The majority could not say. All it could muster was that, "[i]n the main," honest-services convictions had involved "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Ibid.*

Justice Scalia, Justice Kennedy, and Justice Thomas declined to participate in *Skilling's* rescue mission. They saw the Court's decision as an act of "not interpretation but invention." *Id.,* at 422 (opinion of Scalia, J.). Nothing in the statute, they observed, confined breaches of the duty of honest services to bribes or kickbacks. Indeed, not a single lower court had understood the concept to be limited in that way. *Id.,* at 423. Nor

10

could the dissenters find anything in the judicial power permitting them to "replac[e] a vague criminal standard that Congress adopted with a more narrow one (included within the vague one)." *Id.,* at 422.

Even on its own terms, the dissenters noted, the majority's reconstruction of the statute failed "to eliminate [its] vagueness." *Id.,* at 421. The majority had not attempted to define what constitutes a breach of the "'honest services' obligation," but sought to identify only conduct that fell within its "core". *Ibid.* Nor had the majority done anything to "solve the most fundamental indeterminacy" in honest services-fraud theory, *ibid.*, for nothing in its decision explained what kinds of fiduciary relationships are sufficient to trigger a duty of honest services in the first place. Is the duty of honest services limited "to public officials" serving the government? *Ibid.* Does it also apply "to private individuals who contract with the public?" *Ibid.* Or does it apply to "everyone" who owes some sort of fiduciary responsibility to others, including (say) a corporate officer? *Ibid.* What source of law, too, should a court consult to answer these

questions?  Must a fiduciary duty arise from positive state or federal law, or can it arise from general trust law, "a *corpus juris* festooned with various duties"? *Id.,* at 417–418.  All these questions, the dissenters observed, had long divided lower courts and remained unanswered.

Today, the Court returns to these quandaries.  The jury instructions in this case sought to identify at least one instance when a duty of honest services arises–namely, when a private individual has "'dominated and controlled any governmental business'" and "'people working in the government actually relied on him because of a special relationship he had with the government.'" *Ante*, at 9–10.  But that formulation, the Court holds is, "too vague" to pass constitutional muster.  *Ante*, at 10.  That is so, the Court reasons, because it could result in the conviction of *anyone* whose "clout exceeds some ill-defined threshold" and thus sweep in "effective lobbyists" exercising their First Amendment right to petition the government.  *Ibid*.  The Court also pauses briefly to address two alternative tests the government suggests for defining when a duty of honest services

12

may attach. But the Court takes no view on the first and rejects the second. *Ante*, at 11–12. In the end, we may now know a little bit more about when a duty of honest services *does not* arise, but we still have no idea when it *does*.

It's a situation that leaves prosecutors and lower courts in a bind. They must continue guessing what kind of fiduciary relationships this Court will find sufficient to give rise to a duty of honest services. For them, it is back to the drawing board in their indictments and their jury instructions. But they are not the main victims here. That plight belongs to private citizens. In this country, a criminal law is supposed to provide "ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 576 U.S. 591, 595 (2015); see also *Connally v General Constr. Co.,* 269 U.S. 385, 391 (1926). Yet even 80 years after lower courts began experimenting with the honest-services-fraud theory, no one can say what sort of fiduciary relationship is enough to sustain a federal felony conviction and decades in federal prison.

To be sure, I cannot fault the Court for the problem. The difficulty here stems from the statute and the lower court

decisions that inspired it.  I have no doubt that if all nine Justices put our heads together, we could rewrite §1346 to provide fair notice and minimize the risk of uneven enforcement.  I have no doubt, too, that we could find a hook for any such rule somewhere in the morass of pre-*McNally* lower-court case law.  Maybe, too, that is the path we are on, effectively writing this law bit by bit in decisions spanning decades with the help of prosecutors and lower courts who present us with one option after another.  But that is not a path the Constitution tolerates.  Under our system of separated powers, the Legislative Branch must do the hard work of writing federal criminal laws.  Congress cannot give the Judiciary uncut marble with instructions to chip away all that does not resemble David.  See *United States v. Reese*, 92 U.S. 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large"); *United States v Wiltberger*, 5 Wheat. 76, 95 (1820) (Marshall, C.J.) ("It is the

14

legislature, not the Court, which is to define a crime, and ordain its punishment").

Doubtless, Congress had high and worthy intentions when it enacted §1346. But it must do more than invoke an aspirational phrase and leave it to prosecutors and judges to make things up as they go along.  The Legislature must identify the conduct it wishes to prohibit.  And its prohibition must be knowable in advance–not a lesson to be learned by individuals only when the prosecutor comes calling or the judge debuts a novel charging instruction.  Perhaps Congress will someday set things right by revising §1346 to provide the clarity it desperately needs.  Until then, this Court should decline further invitations to invent rather than interpret this law.

In support of the argument of vagueness in application of the honest services-fraud statute, The Supreme Court recently criticized The Government for making "a federal crime of an almost limitless variety of [allegedly] deceptive actions traditionally left to state contract and tort law–in flat contradiction with our caution that, '[a]bsent [a] clear statement by Congress,' courts should 'not read the mail [and wire] fraud statute[s] to place under federal superintendence a vast array of conduct

traditionally policed by the States.' *Cleveland*, 531 U.S., at 27." *Ciminelli v. United States*___ U.S.___(slip op., at 8).  The court unanimously rejected the government's theory that "criminalizes traditionally civil matters and federalizes the traditionally state matters." *Id.*

The Government's theory in this case is precisely what the Supreme Court of the United States has rejected.  The core element of the Government's theory is a contract between Praetorian and the Seminole County Tax Collector's office.  All disputes about what was allowed under that contract are questions of state contract law, not federal criminal law.  To do otherwise "criminalizes traditionally civil matters and federalizes traditionally state matters" in direct contravention of clear guidance from the Supreme Court of the United States.

**Consulting Contract Discussion**

The Government apparently alleges that entering into a contract for services was part of the conspiracy (¶ 5.a).  That contract was executed on January 3, 2017.  The Government makes no allegation, however, that anything was improper about the contract except that the invoices that were submitted included "inflated" prices (¶ 5.b).

The contract itself, however, contains clear and unambiguous language allowing Praetorian to invoice for "fees and costs" associated with deliverables procured from third parties the contract provides in part:

> In the event deliverables provided under this agreement require prepayment to third parties in excess of $100 in a given month, Consultant shall invoice fees and costs relating to such deliverables to Tax Collector, which invoice shall be promptly paid prior to the production of such deliverables.

> (Contract, p. 3, ¶5).

The term "fees" in the contract is clearly separate from, and in addition to, "costs" of third-party goods and services.  If the Government is arguing that the "fees" are excessive, then they are clearly engaging in precisely what the Supreme Court has admonished against, namely "criminaliz[ing] traditionally civil matters and federaliz[ing] traditionally state matters."  *Ciminelli*  No. 21-1170 (May 11, 2023)(slip op., at 8).  The appropriateness of the markup fees is a state contract law, not federal criminal law, matter.

Any examination of whether the markup "fees" under the contract were improperly "inflated" as per the Government's claim falls squarely within the realm of Florida contract law.  Under Florida contract law, §671.205(3),  a "usage of trade"

17

is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question.

Mr. Shirley routinely and lawfully included markup fees on third-party products and services for all of his clients, both campaign and non-campaign related, clearly establishing a "usage of trade."  If there were an objection to any markup fees, that objection should have been handled as a state law contract issue, not a federal criminal issue.

Mr. Shirley asserts that the statutes are unconstitutional on their face and as applied in Mr. Shirley's case, for the reasons stated by Justice Gorsuch and Justice Thomas in their concurring opinion in Percoco and Justice Scalia, Justice Thomas and Justice Kennedy concurring opinion in Skilling.

WHEREFORE, the Defendant, by and through his undersigned counsel requests that this Honorable Court enter an Order dismissing the indictment and declaring that 18 U.S.C. § 1346 is unconstitutional because it is vague and therefore violates the Due Process Clause of the United States Constitution.

Respectfully submitted this 31st day of May, 2023.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of May, 2023, I have electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Amanda Sterling Daniels, Assistant United States Attorney, United States Attorney's Office, 400 W. Washington Street, Suite 3100, Orlando, FL 32801, amanda.daniels@usdoj.gov and Chauncey Bratt, Assistant United States Attorney, United States Attorney's Office, 400 W. Washington Street, Suite 3100, Orlando, FL 32801, chauncey.bratt@usdoj.gov.

> s/Warren W. Lindsey
> WARREN W. LINDSEY, of
> LINDSEY, FERRY & PARKER, P.A.
> 341 N. Maitland Avenue, Suite 130
> Maitland, FL 32751
> *Mail:*  P.O. Box 505
> Winter Park, FL 32790
> Telephone:  (407) 644-4044
> Facsimile:  (407) 599-2207
> Attorneys for the Defendant.
> warren@warrenlindseylaw.com

19