UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:22-cr-123-GAP-DCI

MICHAEL COURTNEY SHIRLEY

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION FOR NEW TRIAL**

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, hereby responds in opposition to the defendant's motion for a new trial, Doc. 93. The defendant has failed to meet his burden of establishing that he is entitled to a new trial. Specifically, throughout his motion the defendant merely lists objections made during the trial that were correctly ruled upon by this Court. Although the defendant asserts he is entitled to a new trial, he fails to articulate his basis for the argument that the interests of justice require a new trial. For these reasons, the United States respectfully urges the Court to deny the defendant's motion for new trial.

**I.     Procedural and Factual Background**

On August 10, 2022, a federal grand jury returned an indictment charging the defendant with one count of conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 1349 (Count One), and five counts of honest services fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Counts Two through Five). Doc. 1. On July 24, 2023, the defendant's trial on these charges commenced. Doc. 71. After a

lengthy and thorough voir dire, a jury was impaneled and sworn for service. *Id.* During the voir dire process the Court allowed each party ten minutes to voir dire each of the three venire sections. Through the voir dire process some jurors were properly stricken for cause. Other times, where jurors stated that they could be fair and impartial, the Court denied certain defense requests to strike jurors for cause. The defendant, through his attorneys, requested additional preemptory strikes. The Court denied this request.

Also on July 24, 2023, the United States informed the Court that it had recently learned that one of its witnesses, Joseph Ellicott, intended to invoke his Fifth Amendment privilege against self-incrimination. Specifically, Ellicott intended to invoke his Fifth Amendment privilege on the narrow issue of whether he had engaged in commercial sex acts with a minor. The United States provided an oral argument on this issue and provided the Court with case law including, *United States v. Feliciano-Francisco*, 701 F. App'x 808, 813 (11th Cir. 2017) and *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011). In response to the defendant's objection to the testimony of Ellicott and request that Ellicott be stricken as a witness, the Court allowed the defendant research the issue and present argument and case law on the next day, July 25, 2023.

On July 25, 2023, the Court heard from Ellicott with his attorney present regarding the precise issues on which he intended to invoke his Fifth Amendment privilege. Doc. 72. The Court also heard argument from the defense on the issue of whether Ellicott should be allowed to testify. The Court unsealed the motion for

downward departure filed in Ellicott's case, 6:22-cr-9, Doc. 57. Doc. 72. The Court ruled that Mr. Ellicott would be allowed to testify as a witness for the United States and to invoke his Fifth Amendment privilege against self-incrimination on the narrow line of defense questioning as to whether he personally engaged in commercial sex acts with a minor. The Court ruled that the defense could question Ellicott about information he provided to the Government regarding the sex trafficking of a minor, any benefit he received from providing that information, and any additional benefit he might hope to receive from testifying in the defendant's trial as a United States witness. During his testimony at trial Ellicott provided answers to these questions on both direct examination and cross examination. Ellicott invoked his Fifth Amendment privilege as to a line of questions intended to elicit whether Ellicott, himself, ever engaged in commercial sex acts with a minor.

In addition to these answers, Ellicott provided credible inculpatory evidence about the defendant's role in the scheme to bribe the former Seminole County Tax Collector, Joel Greenberg, which will be discussed in further detail below.

At trial, the United States entered evidence that established the defendant's guilt beyond a reasonable doubt. The United States presented evidence that the defendant initially worked as Greenberg's campaign manager during the election for Seminole County Tax Collector in 2016. After Greenberg was elected to office, witnesses from the tax collector's office testified that the defendant, though his company Praetorian Integrated Services, LLC (Praetorian), was hired as a contracted consultant. *See also* Doc. 81 at U.S. Ex. 1. Evidence presented at trial showed that

Praetorian was not incorporated in Florida until December 2016 and was dissolved in September 2019, *i.e.* Praetorian's existence was limited to the time that it had a contract with the Tax Collector's office. *Id.* at U.S. Ex. 13. A witness from the tax collector's office went through various terms from the consulting agreement contained in U.S. Ex. 1. This same witness also testified that the defendant was initially hired to perform transition services for the tax collector's office. The defendant was paid a monthly fee by the tax collector's office of $12,500.

The witness also testified that the defendant was responsible for printing services for the tax collector's office. The witness testified that in that capacity the defendant submitted invoices for the printing services. Another witness testified that she was employed at the tax collector's office prior to Greenberg taking office and noticed an increase in the price of printing generally. The former financial officer for the tax collector's office testified that she processed the invoices and that they were paid. Doc. 81 at U.S. Ex. 2-2.54. All of these witnesses testified that they did not see the defendant in the office very often. None of these witnesses could describe exactly what work the defendant performed for the office, with the exception of one witness who recalled the defendant coordinating the re-printing and re-branding of materials for the tax collector's office early in the transition. The United States also presented the testimony of two former interns for Praetorian who also testified that they had no idea what the defendant's role was at the tax collector's office.

The Untied States presented evidence that established beyond a reasonable doubt that the invoices submitted by the defendant were fraudulently inflated. The

United States presented the testimony of Jason Ross, another contractor from the tax collector's office. Ross testified that he took care of the printing for the tax collector's office at the request of the defendant. Ross also testified that at the request of the defendant, he billed Praetorian for that printing work. The United States entered into evidence the invoices from Ross's company to Praetorian to demonstrate the rate of inflation between the two sets of invoices. *See* Doc. 81 at U.S. Ex. 3. The United States also presented a summary chart that demonstrated the rate of the inflation between the invoices from Ross's company and those of Praetorian to the tax collector's office. Doc. 81 at U.S. Ex. 19. A United States financial analyst explained this chart during his testimony.

In addition to the evidence regarding the fraudulently inflated invoices, the United States presented evidence that established beyond a reasonable doubt that the defendant participated in scheme to pay a bribe and kickback to Greenberg. During the trial, Ellicott testified that on September 25, 2017, Greenberg contacted Ellicott and asked him to pick up $6,000 from the defendant. The defendant objected to the admission of Greenberg's statement, arguing that it was inadmissible hearsay. The Court correctly found that this statement and others testified to by Ellicott were exceptions to the rule against hearsay because they were statements of a co-conspirator made in furtherance of the conspiracy.

Ellicott testified that he coordinated the pick-up of the cash via text message with the defendant. The United States entered into evidence call and text records demonstrating that calls were placed between the defendant, Ellicott, and Greenberg

and that text messages were exchanged between the defendant and Ellicott to coordinate the pickup. Doc. 81 at U.S. Ex. 4, 5, 11, 12. Ellicott testified that he drove to the defendant's office and picked up the cash which he believed was $6,000. The United States entered into evidence bank records from the defendant's bank account that showed the withdraw of $6,000 in cash that same day. Doc. 81 at U.S. Ex. 21.

      Ellicott also testified that when he arrived at the defendant's office, the defendant handed him a fake agreement purporting to purchase 10% of Ellicott's company for $5000. Doc. 81 at U.S. Ex. 6. Ellicott testified that the defendant indicated that the "agreement" was a sham agreement to cover up the payment because the defendant had a contract with the tax collector's office. Ellicott explained on both direct and cross examination that he gave the fake agreement to his mother who wrote, "re: Joel Greenberg" and "Pd:?" and filed it away. The United States also offered testimony from a forensic handwriting expert who examined the defendant's purported signature on the fake agreement and compared it to known handwriting from the defendant. The expert testified that she was virtually certain that the defendant signed his name and wrote the date next to it on the fake agreement at U.S. Ex. 6.

      Ellicott testified that he took the cash given to him by the defendant, as instructed, and provided it to Greenberg. The United States' financial analyst testified that he examined Greenberg's bank records and observed that three days later, on September 28, 2017, Greenberg deposited $6,020, split in half, into his two personal accounts at Fairwinds Bank. The analyst testified that on the same day that

the money was deposited, Greenberg moved most of the money deposited into one of the accounts to join the money in the other, and that he then used it to pay his $6,600 credit card bill. The United States entered these bank records into evidence. Doc. 81 at U.S. Ex. 22-23.

Finally, Ellicott testified that, later on, Greenberg and the defendant learned that the United States was investigating the tax collector's office. In response, Ellicott again acted as the middleman between the defendant and Greenberg. During this time, Ellicott testified, he met the defendant at a storage unit. During that meeting, per Ellicott's testimony, the defendant told Ellicott that they were no longer going to rely on the fake contract to cover up the bribe and kickback to Greenberg. Instead, Ellicott testified, the defendant told Ellicott they were going to say that the cash was for furniture.

The United States presented testimony from the defendant's former accountant who testified that the defendant never mentioned the purchase of Ellicott's company for the preparation of either his personal or business tax returns. Finally, the United States presented the testimony of a financial analyst who summarized Florida Department of State records for Praetorian and financial records for the defendant, Praetorian, and Greenberg.

During the trial, the United States informed the Court that defendant intended to attempt to enter what the United States believed were inadmissible jail calls between Greenberg and Ellicott. The Court held a hearing outside the presence of the jury to determine whether the calls were admissible. The defense proposed the

7

admission of five jail calls that were unredacted and not transcribed. During the hearing the defendant's attorney argued that these calls were admissible to show that Greenberg and Ellicott sought to frame the defendant. However, the defendant's attorney was unable to point to any statement in any of the calls or provide a timestamp for any of the calls where any such thing was discussed. As such, the Court properly excluded this testimony as inadmissible.

At the close of trial, the defendant requested a special instruction be read to the jury. Specifically, the defendant asked the Court to instruct the jury that "Because Mr. Ellicott invoked his Fifth Amendment privilege against self-incrimination, you are permitted to draw an adverse inference against him and in favor of the defendant." In support of this instruction, the defendant cited *U.S. ex. rel. DRC, Inc. v. Cluster Battles, LLC*, 415 F. Supp. 2d 628, 630 (E.D. Va. 2006). The Court rejected the proposal.

## II.   Legal Analysis

The defendant has failed to meet his burden of establishing a basis for a new trial. Throughout his motion, the defendant merely restates many of the evidentiary objections that were made during the trial. These objections were properly ruled upon by the Court. The defendant provides little to no legal support for his argument that these rulings were made in error. Likewise, the defendant fails to establish how any of these rulings individually or in the aggregate entitle him to a new trial in the interest of justice. As such, the Court should deny the defendant's motion for new trial.

Rule 33 of the Federal Rules of Criminal Procedure states "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." In his motion the defendant identifies his grounds for a new trial as the "interests of justice" Doc. 93 at 7. The Eleventh Circuit has explained:

> The decision to grant or deny a new trial motion based on the weight of the evidence is within the sound discretion of the trial court. An appellate court may reverse only if it finds the decision to be a clear abuse of that discretion. While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.

*United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985) (citation omitted).

Here, the Court rulings identified in the motion were not made in error and the defendant has failed to provide support for his argument that they were. The defendant objects to this Court's striking for cause two jurors who stated that they did not believe in the system or laws. Doc. 93 at 2. These jurors were properly stricken, as it was clear that they were unlikely to base their decision on the evidence presented. Next the defendant argues that the Court should have dismissed certain jurors and not dismissed others over defense objection, as detailed in the defendant's motion, Doc. 93 at 2-3. The Court properly struck members of the venire for cause where those members stated that they could not be fair and impartial. *See United States v. Shaw*, 713 F. App'x 809, 813 (11th Cir. 2017) ("If a court determines that a

9

juror cannot be impartial, that juror may be removed for cause."). Alternatively, where a juror indicated that he/she may have a potential bias, the Court properly inquired further. Where upon further inquiry the juror stated that he/she could be fair and impartial and render their decision based on the evidence presented, the Court properly overruled the defendant's motion to strike for cause. *See United States v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999) ("When the juror demonstrates, however, that she can lay aside any opinion she might hold and render a judgment based solely on the evidence presented in court, then dismissal is not required").

The defendant argues that the Court erred in denying his request for additional preemptory challenges. Doc. 93 at 3. The Court did not err in this ruling. Rule 24 of the Federal Rules of Criminal Procedure governs the number of preemptory strikes given to each party in trial, including when additional preemptory strikes may be given. Specifically, Fed. R. Crim. P. 24(b) states, "[t]he court may allow additional preemptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." This trial involved only a single defendant. As such, there was no basis for the Court to grant additional preemptory strikes and Court properly denied the defendant's request. For these reasons the Court did not err in the jury selection process.

The defendant next argues that the Court erred in allowing Mr. Ellicott to testify and invoke his Fifth Amendment privilege against self-incrimination. Doc. 93 at 3-4. The defendant's motion correctly states that generally it is improper to call a witness for the sole purpose of having that witness invoke his/her Fifth Amendment

10

privilege as to his/her entire testimony. *United States v. Feliciano-Francisco*, 701 F. App'x 808, 813 (11th Cir. 2017). However, as stated in *Feliciano-Francisco*, it is permissible to allow the testimony of a witness who will provide testimony, but who will also invoke the Fifth Amendment privilege in response to a narrow subset of questions meant to illicit impeachment information. *See Feliciano-Francisco*, 701 F. App'x at 813 (finding admission of defense witness testimony proper where a defense witness testified on direct examination and then invoked her Fifth Amendment privilege on cross-examination as to her immigration status and prior statements to law enforcement.). Ellicott did not invoke his Fifth Amendment privilege on questions intended to illustrate his potential bias. During both direct examination and cross examination, Ellicott answered questions about information he provided to the government regarding the sex trafficking of a minor, any benefit he received from providing that information, and any additional benefit he might hope to receive from testifying in the defendant's trial as a United States witness. In *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011), in different context, the Eleventh Circuit considered whether a trial court could properly limit cross-examination on the underlying facts of a witness's pending state charges. *Id.* at 1187. There the Court explained that:

> "[t]he jury understood that Jacquette had been indicted as a co-defendant with Barrington, had pleaded guilty and was testifying pursuant to a Plea and Cooperation Agreement with the United States Attorney's Office, in which the government agreed not to file any additional criminal charges against him in exchange for his cooperation. Jacquette acknowledged that he hoped to receive a sentence below the Guidelines through a substantial assistance motion from the U.S. Attorney's Office pursuant to U.S.S.G. § 5K1.1. From

11

> this line of inquiry, a reasonable juror would appreciate that Jacquette was motivated to testify favorably for the government in hopes of receiving a reduced sentence."

*Id.* at 1188-1189. From this, the court found that "[t]hrough cross-examination, Barrington's counsel elicited sufficient information from Jacquette to enable the jury to assess his credibility, including possible motives and personal bias he held against Barrington." The court went on to hold that "questioning him about the pending state burglary charge would not have presented a significantly different impression of his credibility to the jury." Although *Barrington* involved an unrelated State charge, the reasoning applied there is also applicable here. Here, Ellicott answered questions that allowed the jury to fully understand the scope of his potential bias and his possible motives for testifying. As such the Court did not err in allowing Ellicott to testify, even though he invoked his Fifth Amendment privilege in response to a narrow subset of questions regarding whether he had engaged in commercial sex acts with a minor.

The defendant next argues that the Court improperly admitted the fake contract at Doc. 81 at U.S. Ex. 6. Federal Rule of Evidence 901(a) states, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Section (b) of this rule provides examples of evidence that satisfy this requirement including, "Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)

12

Here, the fake contract at U.S. Ex. 6 was properly authenticated by Ellicott who testified that he recognized the document in U.S. Ex. 6, was familiar with the document, and confirmed that the document in U.S. Ex. 6 was the document he was given at his meeting with the defendant. When asked about the writing on the document, Ellicott explained on both direct examination and cross examination that his mother wrote on the document for record keeping purposes. The Court correctly ruled that document was properly authenticated under Federal Rule of Evidence 901. Further, this document was timely disclosed to the defense in Discovery. The Court did not err in admitting this document.

The defendant argues that the Court erred in admitting testimony about hearsay statements made by Greenberg. Federal Rule of Evidence 801(d)(2)(E) allows for the admission of statements of a co-conspirator made in furtherance of the conspiracy. During the trial, Ellicott testified that on September 25, 2017, Greenberg contacted Ellicott and asked him to pick up $6,000 from the defendant. These and other statements were made during the course of the conspiracy. These statements fall squarely in the category of those that are not considered hearsay under Federal Rule of Evidence 801. *See also United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002) ("Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy.")

Next, the defendant contends that the court's exclusion of recorded jail calls between Greenberg and Ellicott were improperly excluded. Under Federal Rule of

13

Evidence 401, evidence is relevant if, "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." However even where evidence is relevant it may still be excluded if, "[i]ts probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here the defendant sought the admission of five unredacted jail calls. During the hearing, the defendant's attorney argued that these calls were admissible to show that Greenberg and Ellicott sought to frame the defendant. However, the defendant's attorney was unable to point to any statement in any of the calls or provide a timestamp for any of the calls where any such thing was discussed. As such, there was no showing that the calls were relevant to any fact at issue in the case, nor that any relevance they may have had was not substantially outweighed by a danger listed in Federal Rule of Evidence 403. For these reasons the Court properly excluded these calls from evidence.

    Finally, the defendant asserts that Court improperly denied his request for a special jury instruction. Specifically, the defendant asked the Court to instruct the jury that, "Because Mr. Ellicott invoked his Fifth Amendment privilege against self-incrimination, you are permitted to draw an adverse inference against him and in favor of the defendant." In support of this instruction, the defendant cited *U.S. ex. rel. DRC, Inc. v. Cluster Battles, LLC*, 415 F. Supp. 2d 628, 630 (E.D. Va. 2006). The defendant's proposed instruction is not a pattern instruction, the support provided for

14

giving such an instruction was non-binding on this Court, and it was applied in a civil case, not a criminal case. As such, the Court's rejection the proposed instruction was not in error.

### III. Conclusion

The defendant has failed to demonstrate that the rulings that he claims were made in error amount to a miscarriage of justice either individually or in the aggregate. For these reasons, the United States respectfully urges the Court to deny the defendant's motion for new trial.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ *Amanda S. Daniels*
Amanda S. Daniels
Assistant United States Attorney
Florida Bar No. 111444
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: amanda.daniels@usdoj.gov

U.S. v. MICHAEL SHIRLEY          Case No. 6:22-cr-123-GAP-DCI

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael W. Nielsen, Esq.

                     */s/ Amanda S. Daniels*
                     Amanda S. Daniels
                     Assistant United States Attorney
                     Florida Bar No. 111444
                     400 W. Washington Street, Suite 3100
                     Orlando, Florida 32801
                     Telephone:   (407) 648-7500
                     Facsimile:     (407) 648-7643
                     E-mail:        amanda.daniels@usdoj.gov